[No. 3194.]

## Jodie Bird v. The State.

1. Theft—Indictment—Variance.—The true name of the owner of the alleged stolen property was Sam. McCasland. The indictment alleged his name to be Sam. McCassling. He was shown to have been equally well known by both names. *Held*, that the variance was not material.

2. Same—Voluntary Return of Stolen Property, such as under the provisions of Article 378 of the Penal Code will operate to reduce a theft from the grade of felony to misdemeanor, must be made under the following circumstances: 1. The return must be voluntary, that is, willingly made; not made under the influence of compulsion, fear of punishment or threats. If, however, it be made under the influence of repentance for the crime, and with the desire to make reparation to the injured owner, it will be voluntary, although it may also be influenced by fear of punishment. 2. It must be made within a reasonable time after the theft, and before prosecution for the theft has been commenced. 3. It must be an actual, not merely a constructive return of the property into the possession of the owner. 4. The property returned must be the identical property, unchanged and all of it, that was stolen. See the opinion *in extenso* for a review of the authorities on the doctrine.

3. SAME—CHARGE OF THE COURT—CASE STATED.—In this case the defendant drove the stolen animal about ten miles from its range, and attempted to sell it. Pending negotiations of sale, it was discovered by parties acquainted with it, when the party with whom the sale was being negotiated told the defendant to turn it loose, and that they would get it at another time. In a few days the owner told the defendant that all he wanted was the animal, and that if he would drive it back home, he, the owner, would not prosecute him, the defendant. Soon after this the owner found the animal on its accustomed range. *Held*, that under such circumstances the court should have given in charge the issue as to the voluntary return of the animal by the defendant; that, while not strictly a return of actual possession, it was such as was demanded by the owner, and therefore sufficient.

4. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—See the statement of the case for the substance of affidavits in support of a motion for new trial based upon newly discovered evidence, *held* sufficient to authorize the award of a new trial.

APPEAL from the District Court of Milam. Tried below before the Hon. W. E. Collard.

The conviction was for the theft of one head of cattle, the property of Sam. McCassling, in Milam county, Texas, on the tenth day of December, 1883. The penalty awarded was a term of two years in the penitentiary.

J. B. Bryant was the first witness for the State. He testified, in substance, that on the night of the tenth day of December, 1883, he got home from the town of Rogers and found the defendant and Granger Elliot in bed at his house. Next morning the defendant told witness that he had brought a steer to sell him, and that the steer was tied on the side of the road near by. Defendant, Elliot and witness started down the road to look at the animal. Witness saw that the animal was not fat enough for beef, declined to buy it, and told the boys to release it. The animal was a white and black pided steer, branded SAMY on the ribs. *En route* to the point where the steer was tied, the party saw Pinkney Bird, James Cook and another man looking at the steer. Witness and the two boys did not then go to the steer. It was then that the witness told the boys they had better turn the steer loose, and they would get it some other time. The boys did release the steer.

Sam. McCasland testified, for the State, in substance, that he lived in Bell county, and owned a small stock of cattle in the SAMY brand. Among them was a two year old white and black pided steer. He learned that this steer had been seen by

Pink. Bird and others tied to a tree near J. B. Bryant's, in Milam county. He then went to defendant and told him that he had heard of his driving the steer to Jesse Bryant's. Defendant said: "Yes, I did drive one of your steers to Jesse Bryant's." Witness asked him why he did so. He replied that Bryant had promised him twelve dollars and a half to bring him a steer, and that the witness's steer was the first one he found. He told the witness that he and Granger Elliot drove the steer to Bryant's, tied it out over night, and started next morning with Bryant to see it, but saw Pink. Bird, Jim Cook and some one else looking at it, when Bryant told them they had better turn it loose and get it some other time. Defendant made these statements to witness voluntarily, without threat or persuasion. Witness afterwards told him that he only wanted the steer, and that if he would drive it back, he would not prosecute, unless forced to do so by the grand jury. Bryant lived in Milam county, about ten miles from the steer's range. Witness never consented that the defendant, Elliot, or any one else, should drive the steer off. A few days after the interview with defendant, witness found his steer on its accustomed range. Witness's name was Sam. McCasland, but he was equally well and generally known as Sam. McCassling.

Pinkney Bird testified, for the State, that he saw the steer described tied to a tree on the road near J. B. Bryant's, on the morning of December 11, 1883. He saw Bryant, defendant and Elliot near it. Defendant turned the steer loose. Witness saw that animal again late that evening, about one hundred yards from where he saw it in the morning, feeding along in a hollow.

The motion for new trial raised the issues considered in the opinion. The newly discovered evidence referred to in the last head note of this report was to the effect that the witnesses L. G. and W. W. McDaniel would testify on another trial that, on the twenty-fifth day of December, 1883, they had a conversation with Sam. McCasland; that in that conversation McCasland told them that he went to see the defendant about the alleged theft of the steer; that he told the defendant that he had heard that he, defendant, had driven off one of his steers; that he wanted him, defendant, to acknowledge that he did so, and bring the animal back, and that if he would do so he, McCasland, would not indict him, unless he was forced to do so by the grand jury, and that thereupon the defendant acknowledged that he drove the steer off, and promised to bring it back. The witnesses L.

G. and W. W. McDaniel were called as witnesses for the State and placed under the rule, and had heard none of the evidence when they testified in the case. Since the trial they had heard that McCasland testified that defendant's confession or statement was made voluntary and without compulsion or persuasion, and it was only since the trial that they had informed defendant's counsel of their conversation with McCasland. The affidavit of L. G. and W. W. McDaniels were attached to the motion.

*R. Lyles* and *E. H. Lott*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. 1. Sam. McCassling, the alleged owner of the animal charged to have been stolen, was as well known by that name as by his true name, Sam. McCasland, and there was therefore no fatal variance between the name of the owner as alleged and the evidence of ownership. (Code Crim. Proc., Art. 425; *Rye* v. *The State*, 8 Texas Ct. App., 163; *Cotton* v. *The State*, 4 Texas, 260; *Hart* v. *The State*, 38 Texas, 382; *Bell* v. *The State*, 25 Texas, 574; *Wells* v. *The State*, 4 Texas Ct. App., 20.)

2. If property taken under such circumstances as to constitute theft be voluntarily returned within a reasonable time, and before any prosecution is commenced therefor, the offense is a misdemeanor, punishable by fine not exceeding one thousand dollars. (Penal Code, Art. 738.) A return of stolen property, influenced by a threat of prosecution for the theft, is not a voluntary return within the meaning of the statute. (*Owen* v. *The State*, 44 Texas, 248.) Where a defendant had driven a stolen cow about thirty miles, and was overtaken in possession of the animal, and told that he must return her to her range, and he drove her about ten miles back in the direction of where he had taken her from, and there left her, it was held that this was not a voluntary return within the meaning of the statute. (*Brill* v. *The State*, 1 Texas Ct. App., 572.) In *Grant* v. *The State*, 2 Texas Court of Appeals, 163, this court said, referring to this provision of the Code, that "It never contemplated that a thief, caught in possession of property stolen by him, could reduce a felony to a misdemeanor by simply then offering to give up the stolen property or pay for it." In that case the defendant was caught while he was in the act of skinning a hog he had stolen,

and he then offered to return it to the owner or pay for it. In *Moore* v. *The State*, 8 Texas Court of Appeals, 496, this court, in discussing this subject, said: "To entitle the thief to the mitigated penalty for a voluntary return of the stolen property within a reasonable time, the return must be actual, and demonstrating in itself a contrition for the act, and not a clandestine return and constructive redelivery of the property. The purpose of the statute is to extend the grace and favor of the law to such wrong doers as promptly repent of their acts, and endeavor to make all the reparation in their power to the party injured. In such cases the law looks with mercy upon the penitent, and administers a modified punishment for its infraction. But when the thief fails in his purpose to realize from the stolen property, and, as in this case, releases the stolen animal, which, of its own motions, returns to its accustomed range, the law delivers the prisoner over to justice, who sits blindfolded and inexorable, and sternly metes out the punishment affixed for the original transgression." In *Allen* v. *The State*, 12 Texas Court of Appeals, 190, this court, in again treating upon this subject, said: "If the return is caused by fear that discovery has been made, and a prosecution will be set on foot, would it be voluntary? Are the causes and motives inducing the return to govern? If so, of what character or quality must they be? Suppose fear of detection and punishment is the moving cause. Does it follow that the return is not voluntary? Admitting that it does, suppose that repentance and a desire for reparation, together with fear of detection and punishment, all contribute the acting causes prompting the defendant to return the property, will he not be entitled to this generous provision of our Code?" It was held in that case that if the return of the property was actuated by repentance, in connection with a fear of prosecution and punishment, it was nevertheless a voluntary return within the meaning of the law.

We deduce from the decisions upon this question, and from the statute itself, that a voluntary return of stolen property, within the meaning of the Article of the Code cited, must be under the following circumstances:

1. It must be voluntary, that is, willingly made; not made under the influence of compulsion, threats or fear of punishment. If, however, it be made under the influence of repentance for the crime, and with a desire to make reparation to the

injured owner, it will be voluntary, although it may also be influenced by fear of punishment.

2.  It must be made within a reasonable time after the theft, and before prosecution for the theft has been commenced.

3.  It must be an *actual*, and not merely a *constructive*, return of the property into the possession of the owner.

4.  The property returned must be the identical property, unchanged, and all of it, that was stolen.

In this case, defendant drove the animal from its range a distance of about ten miles, and, while endeavoring to sell it, was discovered by some persons who were acquainted with it, and thereupon defendant was told by the man to whom he was negotiating its sale to turn it loose, and they would get it again at some other time.  Defendant turned the animal loose.  In a few days thereafter, McCasland, the owner of the animal, told the defendant that all he wanted was the animal, and that if he, defendant, would drive it back home, he would not prosecute him.  Soon after this, the animal was found by McCasland in its accustomed range.

We are of the opinion that, under the peculiar facts of this case, the court should have submitted to the jury the issue as to a voluntary return of the animal by the defendant.  We think there was evidence sufficient to demand instructions from the court upon this issue.  If defendant did, in fact, return the animal within a reasonable time, and in such manner as to satisfy the owner thereof, and in accordance with the owner's directions, and if, in so doing, defendant was actuated by a feeling of penitence for his wrongful act, and a desire to make reparation therefor, we think he would be within the benign operation of this merciful provision of our Code.  While such return would not be strictly into the *actual* possession of the owner, still, if it was such a return as the owner desired, and as he was satisfied with, we think it should be held sufficient.  The learned judge did not charge upon this issue, nor did the defendant request him to do so, or except to the charge because of such omission; but the matter was called to the attention of the court in a motion for a new trial.  We think a charge upon this issue was a part of the law of this case, and that the failure to give it was such error as was calculated to injure the rights of the defendant, and is therefore reversible error.

We are also of the opinion that the court should have granted

defendant a new trial upon the ground of newly discovered evidence. The evidence set out in the affidavits accompanying the motion was material to show that defendant's confession, which had been admitted in evidence against him on the trial, had been made under the influence of promises and persuasion, and therefore was not admissible. We think it was sufficiently shown that this evidence had been discovered since the trial, and that its not having been discovered sooner was not attributable to any want of diligence on the part of defendant. We think, also, that this evidence would probably change the result of the verdict on another trial. It would, perhaps, have the effect to exclude from the evidence the confession of the defendant, and should it have this effect there is no other inculpatory evidence against the defendant, so far as is disclosed by the record, except that of the witness Bryant, who was, unquestionably to our minds, an accomplice in the theft, and whose testimony is without corroboration, except by defendant's confession.

It appears from this record that defendant is a boy of tender years, about sixteen years of age, and that in the commission of this theft he was aided by another person, and also acted under the instructions of the witness Bryant, who was carrying on the butchering business, and to whom he had taken the animal to be used by Bryant as a beef, and for which Bryant had promised to pay the boy twelve dollars and fifty cents. It seems that this man Bryant has been permitted, in consideration perhaps of his own escape from just punishment, to testify against this boy, and thus destroy evidence which would perhaps cause him, instead of the defendant, to be incarcerated in the penitentiary for this crime.

Because of the errors we have mentioned, and because we believe that justice demands that the defendant should have another trial, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered June 14, 1884.